**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ben Pepa, | No. CV-25-04049-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Northern Terrace Homeowners Association, | |
| Defendant. | |

  Plaintiff Ben Pepa seeks a temporary restraining order and preliminary injunction directing non-party GoDaddy.com, LLC to take certain actions related to the domain name <northernterrace.vegas>. Based on the present record, it is unclear if urgent injunctive relief is appropriate. Both Pepa and GoDaddy must file briefs as set forth below.

  Pepa owns a home in a community near Las Vegas known as Northern Terrace at Providence. Pepa previously served on the Northern Terrace Homeowners Association ("NTHOA") board of directors, but he became "disappointed with various practices by the NTHOA" and is no longer on the board. (Doc. 11-3 at 2.) Hoping "to call attention to various issues within the Northern Terrace at Providence community," Pepa purchased the domain name <northernterrace.vegas>. (Doc. 11-3 at 2.) GoDaddy is the registrar for that domain name. The website Pepa established and maintained at the domain name contained "several threads and blog posts relating to major topics of discussion" in the Northern Terrace at Providence community. (Doc. 11-3 at 2.)

  In August 2025, NTHOA initiated "a domain name dispute" regarding Pepa's

domain name. That dispute was governed by the Uniform Domain Name Dispute Resolution Policy ("UDRP") and the Rules for Uniform Domain Name Dispute Resolution Policy. Pepa believes NTHOA representatives "made significant misleading representations" during those proceedings that led the panel hearing the dispute to award the domain name to the NTHOA. (Doc. 11-3 at 4.)

On October 13, 2025, GoDaddy sent notice to Pepa and the NTHOA that it had received the panel decision requiring transfer of the domain name. GoDaddy stated it would transfer the domain name "in ten (10) business days on October 27, 2025, unless we receive during this period a complaint following the rules under Paragraph 4(k) of the UDRP." (Doc. 11-2 at 5.) The referenced Paragraph 4(k) provides, in relevant part, that GoDaddy will implement a panel decision in ten business days unless it receives "during that . . . period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii)[1] of the Rules of Procedure." https://www.icann.org/en/contracted-parties/consensus-policies/uniform-domain-name-dispute-resolution-policy/uniform-domain-name-dispute-resolution-policy-25-02-2012-en. The referenced Paragraph 3(b)(xii) of the rules required the NTHOA to include in its administrative complaint a statement that it would "submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction of the courts in at least one specified Mutual Jurisdiction." And the rules define "Mutual Jurisdiction" as a location at

> (a) the principal office of the Registrar (provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction for court adjudication of disputes concerning or arising from the use of the domain name) or (b) the domain-name holder's address as shown for the registration of the domain name in Registrar's Registration Data at the time the complaint is submitted to the Provider.

The former location is Arizona but the latter is Nevada.

---

[1] The version of the UDPR policy available online references Paragraph 3(b)(xiii) but it is 3(b)(xii) that appears relevant.

On October 21, 2025, Pepa notified GoDaddy that he had "commenced a federal lawsuit in the United States District Court of the District of Nevada" and "no transfer of the . . . domain name should occur until the rights of the parties are decided by the federal court." (Doc. 11-2 at 4.) GoDaddy responded that it had received the Nevada complaint but because it "was not filed in a place of mutual jurisdiction, we will be implementing the decision." (Doc. 11-2 at 3.) GoDaddy stated the domain name "will be re-locked upon transfer and will remain on registrar-lock pending the outcome of the court proceedings." (Doc. 11-2 at 3.) Pepa responded that the District of Nevada was "a place of mutual jurisdiction" such that the transfer should not proceed. (Doc. 11-2 at 3.) But on October 27, 2025, GoDaddy responded the "mutual jurisdiction" identified in the complaint was "the location of the principal office of the concerned registrar," *i.e.* Arizona. (Doc. 11-2 at 2.) GoDaddy ended its response by stating it was forwarding "the court-order to the Court Team for further review" and "[t]he domain name will remain locked during this time." (Doc. 11-2 at 2.)

On October 28, 2025, Pepa filed the present suit in Arizona. (Doc. 1.) For undisclosed reasons, Pepa then waited until 11:00 p.m. on November 10, 2025, to file a motion for temporary restraining order. (Doc. 11.) The motion seeks an order requiring GoDaddy

> maintain the status quo of <northernterrace.vegas> domain name registration, including placing the domain name on serverHold and serverTransferProhibited, and not transfer the domain name from Plaintiff for the pendency of the litigation and until the rights of the parties can be fully adjudicated.

(Doc. 11-5 at 1.) Strangely, it seems ordering the domain name to be placed on "serverHold" as Pepa asks would preclude him from continuing to operate his website because, as he explains, "serverHold status renders the domain name inactive." (Doc. 11 at 2.) Rendering the domain name inactive likely would cause the very harms Pepa claims to fear.

The present record presents significant factual questions that must be clarified before the court can resolve the motion for temporary restraining order. An initial issue is

whether this court has the authority to issue an injunction against non-party GoDaddy. According to Pepa, the court has the authority to order actions by GoDaddy because it qualifies as a person "in active concert or participation" with both parties to this suit. Fed. R. Civ. P. 65(d)(2)(C). Pepa argues GoDaddy is "in control of 'property' (e.g., domain name registration) that is involved in this lawsuit," so it is acting in concert with the parties and "bound by an order of this Court related to the domain name registrations at issue." (Doc. 11 at 12-13.) The court has previously expressed some skepticism regarding issuance of an injunction against an entity in GoDaddy's position under Rule 65. *See Fornix Holdings LLC v. Unknown Party*, No. CV-24-03383-PHX-KML, 2024 WL 5223585 (D. Ariz. Dec. 26, 2024). But obtaining an official position from GoDaddy is the simplest way to resolve this issue. Solely for purposes of this order, the court accepts that GoDaddy qualifies as a person that might be bound by issuance of an injunction in this case. In that capacity, GoDaddy must submit a brief addressing the following:

1. Has the transfer of the domain name to NTHOA occurred? If not, under what conditions will it occur?
2. For purposes of this case, does GoDaddy qualify as a "person[] bound" under Fed. R. Civ. P. 65(d)(2)(C)?
3. The UDPR provides GoDaddy "will cancel, transfer or otherwise make changes to domain name registrations . . . [upon] receipt of an order from a court . . . of competent jurisdiction, requiring such actions." UDPR ¶ 3. Is the United States District Court for the District of Nevada, in GoDaddy's view, a court of "competent jurisdiction" for purposes of the UDPR such that GoDaddy would comply with interim or final orders from that court?
4. If a party files a lawsuit in a court of "mutual jurisdiction" under Paragraph 3(b)(xii) of the rules of procedure but that court transfers the suit to a "court . . . of competent jurisdiction" under UDPR ¶ 3(b), would GoDaddy implement the UDRP panel's decision at the time of the judicial transfer?

1 Pepa must submit a supplemental brief addressing the following:

    1. Provide a copy of the UDPR complaint that indicates the jurisdiction selected by NTHOA.

    2. If the transfer of the domain name has not occurred, and GoDaddy agrees to abide by orders issued by the District of Nevada, should this case be transferred to the District of Nevada or dismissed in light of the "first to file" rule as explained in *Pacesetter Sys. Inc., v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)?

    3. How would placing the domain name on "serverHold" status prevent the irreparable harm Pepa fears?

The NTHOA must submit a brief addressing the following:

    1. If the transfer of the domain name has not occurred and GoDaddy agrees to abide by orders issued by the District of Nevada, should this case be transferred to the District of Nevada or dismissed in light of the "first to file" rule as explained in *Pacesetter Sys. Inc., v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)?

    2. Does Pepa have a likelihood of success on his claims sufficient to support his request for early injunctive relief?

**IT IS ORDERED** no later than **November 26, 2025**, plaintiff, defendant, and non-party GoDaddy.com LLC shall provide the briefing set forth above.

**IT IS FURTHER ORDERED** counsel for plaintiff shall provide a copy of this order to GoDaddy and NTHOA as soon as practicable.

Dated this 13th day of November, 2025.

                                           Honorable Krissa M. Lanham
                                           United States District Judge